# SUPREME COURT.

JOSEPH B. ENOS, GEORGE W. TIFFT and GURDON GRANT vs. EDWIN THOMAS and ALFRED A. HUNTER.

A contract executed by E. T., to deliver a certain quantity of wheat to the firm of J. B. E. & Co., to be manufactured into flour, &c.—and A. A. H., for a valuable consideration, signed, at the foot of the contract, an undertaking whereby he *guaranteed*

*a full and perfect performance of the agreement on the part of E. T.* On demurrer to the complaint, in an action brought upon the contract by the firm of J. B. E. & Co., against E. T. and A. A. H., jointly, *held*, that the two instruments should be considered as one contract, and the defendants, as principal and surety, were therefore properly joined in the same action. Demurrer for that cause overruled.

*Held*, no cause of demurrer to the complaint, because the plaintiffs claimed a *sum certain* on account of the defendants' breach, without setting out an *account current* with the defendants. It is sufficient in such a case, after stating the terms of the contract, to state a performance on the part of the plaintiffs, and a failure on the part of the defendants, specifying wherein they have failed, and then the amount claimed in consequence of such failure.

*According to the terms of the contract,* drafts were alleged (in the complaint) to have been drawn by E. T. on J. B. E. & Co., *and accepted and paid by the plaintiffs,* if not in the firm name of J. B. E. & Co., *then in the name of G. G.,* (one of the firm,) *as and for the plaintiffs' firm name—held,* no cause of demurrer, because it was not alleged that the dafts were drawn and paid the firm of J. B. E. &. Co., (the plaintiffs) solely.

*Albany Special Term, July,* 1849. This was a motion for judgment on account of the frivolousness of the demurrer to the complaint. The complaint sets forth a contract, entered into between plaintiffs, who were partners under the firm of J. B. Enos & Co., and the defendant Thomas, whereby the latter agreed to deliver to the plaintiffs a certain quantity of wheat to be manufactured into flour, for which the plaintiffs agreed to return a stipulated quantity of flour. The plaintiffs further agreed to accept the drafts of Thomas, drawn on time, to a limited amount for which he agreed to put them in funds in time to pay them at maturity and upon his failure to do so they were to be at liberty to sell the wheat or flour for that purpose. Various other provisions were contained in the contract, not necessary to be stated.

The complaint further states that the defendant Hunter, for a valuable consideration, signed at the foot of the agreement between the plaintiffs and Thomas, an undertaking whereby he guaranteed *a full and perfect performance of the agreement on the part of Thomas.* The complaint then proceeds to state that in pursuance of the agreement a large quantity of wheat was delivered by Thomas to the plaintiffs and by them manufactured into flour ; that Thomas made his drafts upon the plaintiffs to a large amount, which were accepted and paid by them—that after applying all the funds furnished by Thomas and all the proceeds of the flour received by the plaintiffs, there remains due to them a balance of $2600, for which sum with interest they claim judgment against both defendants—execution however, only to be issued against Hunter in case an execution first issued against Thomas shall be returned unsatisfied.

The averment in relation to the acceptance and payment of drafts is as follows : "That at different times from November 3, 1848, to March

26, 1849, the said plaintiffs accepted the drafts of said Thomas drawn on time against said wheat and in pursuance of the terms of said contract—that the said drafts were accepted by the said plaintiffs in the firm name of J. B. Enos & Co., *or in the name of Gurdon Grant, used as and for the plaintiff's firm in those particular instances,* which drafts have all been paid by the plaintiffs—that the plaintiffs thus accepted and paid drafts in pursuance of said contract to the amount of $31,000.

. The defendants demurred to the complaint, alleging as grounds of demurrer that several causes of action had been improperly united and that facts sufficient to constitute a case of action were not stated in the complaint.

E. F. BULLARD, *for plaintiffs.*

J. K. PORTER, *for defendants.*

HARRIS, Justice.—I do not understand the code as having changed the rule as it previously existed, by which to determine what causes of action may and what may not be united in the same suit. It is true that it has changed, and, I think, much improved the classification of actions. But now, as before, the causes of action to be joined must be in favor of all the plaintiffs and against all the defendants, and must belong to the came class. If therefore the contract between the plaintiffs and Thomas is to be regarded as a distinct instrument containing a distinct cause of action, from the guaranty executed by Hunter, then the two causes of action could not be joined. In the one case the cause of action would exist against one of the defendants alone, and in the other case, against the other. On the other hand, if the two instruments are to be taken together, as forming in fact but one agreement between the plaintiffs on the one part and the defendant Thomas as principal and Hunter as surety on the other part, then, obviously, so far as it concerns the causes of action stated in the complaint, there is no ground of demurrer.

If in the case under consideration the guaranty, in the same terms in which it is now expressed, had been inserted above the signatures of the parties to the contract, no one would have doubted that it should be regarded as one instrument, and that an action might properly be brought against both defendants, the one as principal and the other as surety. I can see no good reason why the form of execution, or, perhaps I should rather say, the place where the parties affix their signatures, should affect the construction of the instrument. In *Hough* v. *Gray,* 19 Wend. 202, it was held that where one signed a note and another, under an agreement to become security for the consideration of the note, endorsed upon it an

absolute guaranty of its payment, the parties made themselves liable for the payment of the note as *joint and several promissors*. In referring to the case last mentioned, in *Miller* v. *Gaston*, 2 Hill, 190, BRONSON, Justice, says: "It stands upon the principle that two instruments of the same general nature, both executed at the same time, and relating to the same subject-matter, are to be construed together as forming one instrument—as he who signs on the face, and he who endorses his name on the back, both promise to do the very same thing, they may, without doing any violence to the contract, be regarded as joint makers. And as each, in form, promises for himself, the undertaking may be treated as several, as well as joint. So, in *Luqueer* v. *Posser*, 1 Hill, 256, affirmed in error, 4 Hill, 320, it was held that one who guarantees the payment of a note absolutely, by an endorsement on it to that effect, made at or before the delivery, becomes, in legal effect, a joint and several maker. The case of *Hunt* v. *Adams*, cited by Justice Cowen, in *Luqueer* v. *Prosser*, from 5 Mass. 358, is strongly analogous to that under consideration. One Chaplin had made his note payable to Bennett, the plaintiff's intestate. Under the note Adams wrote as follows: "I acknowledge myself holden as surety for the payment of the demand of the above note." PARSONS, Ch. J., said that as to Bennett, the two papers must be considered as *the joint and several promissory note of Chaplin and Adams*. It was the same thing, in effect, as if Adams's name had been signed directly to the note as surety.

I do not think the case before me can be distinguished, in principle, from the class of cases to which I have referred. The guaranty of Hunter was a part of the original agreement between the parties. In *Hough* v. *Gray*, Cameron, the payee of the note, refused to sell the property for which the note was given, unless Hough would become security. In *Luqueer* v. *Prosser*, the horses for which the note was given were sold upon condition that the purchasers should give good endorsed paper. The guaranty of Prosser was received as a performance of that condition, and when received, the property was delivered. In *Hunt* v. *Adams*, the latter was privy to the consideration of the note signed by Chaplin and his undertaking was a part of the original agreement between the parties. So, in this case, it may be assumed that the plaintiffs will prove, if necessary, upon the trial, that Hunter was a party to the original agreement, and that it was only upon condition of his executing the guaranty that they executed the agreement whereby they bound themselves to accept the drafts of Thomas. It is plainly to be inferred, that both instruments were executed at the same time. Thomas and Hunter, in

legal effect, promised to do the same thing. A performance, by either, of what he has agreed to do, would discharge the other from his obligation to the plaintiffs. The two instruments are to be considered as one contract, and the defendants are, therefore, properly joined in the same action.

The next ground for demurrer is that the complaint does not state facts sufficient to constitute a cause of action. It must be admitted that the statements in the complaint are not, in some instances, made with much precision. But I do not agree with the counsel for the defendants, that because the plaintiffs claim to recover a sum certain on account of the defendants' breach of their agreement, they are bound to set out in their complaint an account current with the defendants, or state the process by which they arrive at the conclusion that the sum demanded is due to them. I suppose, in a case like this, it is sufficient for the plaintiffs, after stating the terms of the contract, to state a performance of the contract on their part, and a failure to perform on the part of the defendants, specifying wherein they have so failed, and then to state the amount they claim to recover as the consequence of such failure. This, I think, the plaintiffs have substantially done.

One other point, urged by the defendants' counsel in support of the second ground of demurrer, remains to be noticed. By the terms of the agreement, as it is stated in the complaint, drafts were to be drawn by Thomas *upon* J. B. Enos & Co.—which drafts *that firm* agreed to accept upon certain conditions and restrictions. Thomas also agreed to keep Enos & Co. in funds to meet the payment of the drafts so accepted by them. It is then alleged that *the plaintiffs*, at different times, accepted drafts drawn by Thomas "*in pursuance of the terms of the contract*"—that such drafts were accepted *by the plaintiffs in the firm name of J. B. Enos & Co.*, or in the name of Gurdon Grant, used as and for the plaintiffs' firm name in those particular instances—that all the drafts have been paid by the plaintiffs. These statements in reference to the drafts, and the manner in which they were accepted, are certainly not very explicit, but I think enough is stated to sustain the action, if made out in proof. According to these statements, the drafts were drawn *upon* J. B. Enos & Co., for they were drawn in pursuance of the terms of the contract. The drafts were *accepted by the plaintiffs*—if not in the firm name of J. B. Enos & Co., then in the name of one of the members of that firm used as and for the plaintiffs' firm name. If the facts should turn out in proof precisely so, I think the plaintiffs would be entitled, so far as this branch of the case is concerned, to recover, though I admit the correctness of the doctrine that the terms upon which the obligation of a surety depends

must be strictly complied with before he can be charged. It is quite possible that the proof may present such a state of facts as will exonerate the surety from liability while the plaintiffs recover the balance of their advances from the principal. However this may be, it is enough for the present occasion, that I can see that there are facts enough alleged in the complaint, if true, to sustain the action against both defendants. This, I think, the complaint contains. The plaintiffs' motion is, therefore, granted; but as the demurrer seems to have been put in, in good faith, the defendants must have liberty to answer within *ten* days after service of a copy of this order, on payment of ten dollars for the costs of this motion.

NOTE.—At the last term of the Court of Appeals held at Norwich, N. Y., on the 11th July, 1849. The question of *guaranty* was very ably discussed on the argument of a cause appealed from the Supreme Court, to wit: *Luther Hall, appellant,* v. *John Farmer and Harvey W. Doolittle, respondents:* The instrument and guaranty, declared on in that suit, were as follows:

"$715.88. · For value received, we promise to pay Luther Hall to the order of H. W. Doolittle and John ·Farmer, seven hundred fifteen 88-100 dollars with interest. March 1, 1843. (Signed) KATHERN & DOOLITTLE."

(Endorsed.) "We the undersigned guarantee the payment of the within.
(Signed) JOHN FARMER,
H. W. DOOLITTLE."

· The Supreme Court, (Justices BEARDSLEY and WHITTLESEY delivering opinions) decided that the obligation upon which the action was brought was an undertaking to answer for the debt of another, it was not a promissory note, but a collateral guaranty for Kathern & Doolittle, and no consideration being expressed therein it was void under the statute whether made at the time when the principal debt was created or afterwards. (2 R. S. 135, § 2.) It was stated, that it was wholly impossible to reconcile the numerous cases and judicial dicta on this subject, which might be found in the reports of this and other states, and the attempt would lead only to uncertainty and confusion. In such cases the statute requires the consideration to be expressed in writing, signed by the party to be charged.

SAMUEL A. FOOT, for the appellant, insisted, 1st. That the defendants were liable as makers of a promissory note. (*Prosser* v. *Luqueer,* 4 Hill, 420; S. C. 1 Hill, 256; *Manrow* v. *Durham,* 3 Hill, 584; *Miller* v. *Gaston,* 2 Hill, 188; *Hough* v. *Gray,* 10 Wend. 202.)

2d. The guaranty, or whatever it might be called, was a contemporaneous act with the signing of the body of the instrument, and supported by the same consideration. No other consideration was necessary, or existed, or could truly have been averred. It was a part of the same contract and was upheld by the same consideration. Jointly and severally, it was the same absolute promise that the debt should be paid. (*Leonard* v. *Vredenburgh,* 8 John. 29; *Hunt* v. *Brown,* 5 Hill, 145; *Leggett* v. *Brown,* 6 Hill, 639; *Hall* v. *Newcomb,* 7 Hill, 416; *Curtis* v. *Brown,* 2 Barb. S. C. Rep. 51; *Coddington* v. *Davis,* 1 Comst. 186; *Haywood* v. *Pierce,* 10 Pickering, 228; *Hunt* v. *Livermore,* 5 id. 395; *Doolin* v. *Hill,* 2 Fairfield, (11 Maine,) 434; 1 Greenleaf's Ev. § 269.

HIRAM DENIO, for respondents, insisted. 1st. That the instrument sued on was not a promissory note. (Story on Prom. Notes, § 1; Chitty on Bills, Ed. 1839, p. 548; 1 R. S. 768,

§ 1; Smith on Merc. Law, 113; *Blanchenleger* v. *Blendell*, 6 B. & Ald. 417; *Gosh. Turn. Co.* v. *Hurtin*, 9 John. 217; *Coolidge* v. *Ruggles*, 15 Mass. 387.)

2d. It was a guaranty. (Pitman, Pr. and surety, I. 5, 36; Theo. Pr. and surety, 1, 5, 36; 3 Chitty on Coml. Law, 317; Chitty on Cont. 5 Am. ed. 499; 3 Kent's Com. 5 Ed. 121; Story on Prom. Notes, § 457; *Manrow* v. *Durham*, 3 Hill, 591.)

3d. A guaranty is a "promise to answer for the debt, default or miscarriage of another person," and to be valid it must be in writing; and the writing must express the consideration upon which the promise is made. (Felt on Guar. 1; 3 Kent. 121; *Wain* v. *Warlters*, 5 East. 10; *Ex parte* Gardom, 15 Ves. 287; *Saunders* v. *Wakefield*, 4 Barn. & Ald. 595; *Jenkins* v. *Reynolds*, 3 Brod. & Bing. 14; *Clancy* v. *Piggott*, 2 Adolph. & E. 473; *Morley* v. *Clarke*, 3 Bing. 107; *Sears* v. *Brink*, 3 John. 210; *Rogers* v. *Kneeland*, 10 Wend. 218 and cases referred to; *Raikes* v. *Todd*, 8 Adolph. and E. 846; 2 R. S. 135, § 2; *Smith* v. *Ives*, 15 Wend. 182; *Hacker* v. *Wilson*, id. 343; *Newcomb* v. *Clark*, 1 Denio, 226; *Bennett* v. *Pratt*, 4 id. 275; *Allnutt* v. *Aspenden*, 5 Mann. & Gr. 392.)

4th. There was no consideration in fact for the instrument signed by the defendants, on which the suit was brought, and for that reason it was utterly void. (Chitty on Bills, Ed. 1842, 73, 64, and cases in note 2; *Halliday* v. *Atkinson*, 5 B. & C. 501; S. C. 8 Dow. & Ryl. 163; *Schoonmaker* v. *Rosa*, 17 John. 301; *Bank of Troy* v. *Topping*, 9 Wend. 273; *Tenney* v. *Prince*, 7 Pick. 243; *Hill* v. *Buckminster*, 5 id. 391; *Coml. Bank of Lake Erie* v. *Norton*, 1 Hill, 501; *Slade* v. *Halsted*, 7 Cow. 322.)

This case will probably be decided by the Court of Appeals at the next September term, to be held at Buffalo. A reference will be made to the decision hereafter.